Dennis MARTIN, Plaintiff,

v.

GENERAL MOTORS CORPORATION, CPC–Pontiac Plant, Defendant.

Civ. A. No. 89–CV–73193–DT.

United States District Court, E.D. Michigan, S.D.

Jan. 2, 1991.

1348

Gregory Kenny, Southfield, Mich., for plaintiff.

George Velez, Detroit, Mich., for defendant.

AMENDED [1] OPINION AND ORDER
GRANTING DEFENDANT'S
MOTION TO DISMISS

ROSEN, District Judge.

This matter is presently before the Court on Defendant General Motors Corporation's Motion to Dismiss First Amended Complaint for Failure to State a Claim Upon Which Relief May be Granted. The Court has reviewed the same, the Plaintiff's response thereto, the Briefs of the parties, and the record in this case. The Court finds that a hearing and oral argument is not necessary to the Court's resolution of the instant motion and therefore orders its submission on the briefs filed by the parties, pursuant to Local Court Rule 17(*l*)(2).

FACTS:

The Plaintiff, Dennis Martin, filed this case in state court to obtain benefits under Defendant General Motors' Special Separations Program. The original complaint stated various state law causes of action. General Motors removed the case to this Court on the grounds that the Special Separations Program is an employee benefits plan governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and that Martin's state law claims were consequently preempted by ERISA. This Court's predecessor, the Honorable Richard F. Suhrheinrich, denied the Plaintiff's Motion to Remand the case to the state court because the determination of the Martin's claims would require the Court to interpret the terms of the Special Separations Program pursuant to the provisions of ERISA. Martin's claims therefore arose under the statutes of the United States, and this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. (March 19, 1990, Memorandum Opinion and Order, p. 3).

Subsequently, Martin was granted leave to file his First Amended Complaint to state whatever claims he could under the provisions of ERISA. The First Amended Complaint, filed April 16, 1990, contains nine separate counts, including a claim for benefits (Count 7), breach of ERISA's reporting and disclosure requirements (Counts 1–2, 4, 8), breach of fiduciary duty (Counts 5–6), breach of ERISA's claims procedure requirements (Count 3), and interference with Martin's rights, in general, under ERISA, in violation of 29 U.S.C. § 1140.

Martin was employed by General Motors at its CPC Pontiac plant in Pontiac, Michigan for several years beginning on March 21, 1977. His last position was a salaried position as General Supervisor. According to the First Amended Complaint, Martin first requested a 90–day leave of absence from General Motors in May, 1986. This request was made to the Plaintiff's supervisor, Doug Goimarac. It is not clear from the Amended Complaint whether this request was definitively denied. Goimarac allegedly returned to Martin during the last part of July, 1986 and asked whether Martin was still interested in a leave of absence. Martin responded affirmatively and was granted a 60–day leave beginning August 1, 1990 and continuing through September 30, 1990.

From Martin's deposition testimony, it is apparent that he took this leave of absence to look for other work because the General Motors facility where he was employed was scheduled to be closed. (Martin Dep., pp. 43–44). Martin understood that there was a risk of his not having a job when he returned from his leave of absence. (Martin Dep., p. 46). He ended up getting a job with his brother in Las Vegas, Nevada. (Martin Dep., p. 44).

During the period of his leave of absence, between August 20, 1986 and August 22, 1986, General Motors approved and announced a program to bring about a 25% reduction in General Motors' salaried employees, the Special Separations Program under which Martin seeks benefits in this action. The intent of the Special Sepa-

---

1. It has been brought to the Court's attention that the original Opinion and Order was filed with page 19 missing. The sole purpose of this amendment is to correct that omission. See FED.R.CIV.P. 60(a).

rations Program is to provide selected employees with incentives for early retirement.

On or after August 22, 1986, the existence of the Special Separations Program was communicated to General Motors' salaried employees. On September 19, 1986, Martin telephoned General Motors' employee, Nancy Savage, to find out whether he was eligible to receive the lump-sum severance payments and extended health benefits available under the Special Separations Program. According to the First Amended Complaint, Savage informed him that he would not be eligible because he was a "key employee." Martin also requested "literature," which she denied. (Martin Dep., p. 15).

On October 1, 1986, Martin telephoned Goimarac, his supervisor, and informed him that he voluntarily quit his job. He also asked Goimarac whether he would be eligible for the Special Separations Program benefits. Goimarac did not know. (Martin Dep., pp. 17-18).

The Plaintiff claims in the First Amended Complaint that the Special Separations Program was communicated to all salaried employees via a written announcement:

> 18. Sometime on or after August 22, 1986, person or persons presently unknown communicated said employee benefit plan to all units of Defendant General Motors Corporation's salaried non-union employees.
>
> 19. The notice communicated to all salaried employees stated that:
>
> "The separation program applies to employes fitting either of the following situations during the period 9/186 [sic] through 8/31/87:
>
> * Employes who are age 53 or older for whom retirement will apply, or;
>
> * Employes under age 53 (or over age 53 with less than 10 years or credited service) who are not eligible for an incentive retirement."
>
> * *This program will be administered on a mutually agreeable basis to both management and the employe.* An employee may volunteer for the sepa-

ration offer or the separation offer can be initiated by management.

The title on General Motors Corporation's notice read as follows:

"SEPARATION PROGRAM FOR REGULAR SALARIED EMPLOYES" (First Amended Complaint, Pars. 17-18) (emphasis added). However, this notice was not sent to Martin. Instead, he obtained a copy for himself from a friend. (Martin Dep., p. 16).

The actual terms of the Special Separations Program are set forth in a 9-page memorandum, dated August 29, 1986, distributed to all General Motors personnel directors—North America Groups, Divisions, and Staffs, and attached as Exhibit 1 to General Motors' Motion to Dismiss. In pertinent part, the memorandum provides:

IMPLEMENTATION GUIDELINES

The implementation guidelines for the program are:

> * The program must be administered on a mutually agreeable basis. *Management will select which individuals it wishes to approach,* but the *offer* must be agreed to by the employe in writing. Employes are not barred from consideration if they, on their own initiative, indicate an interest, but, in such cases, *management has the final decision as to whether it is in GM's best interest to separate the employe.*

(Exhibit 1 to Defendant's Brief in Support of Motion to Dismiss, p. 5) (emphasis added).

Absent from the First Amended Complaint and the other papers filed by Martin is any allegation that he was ever offered or selected for participation in the Special Separations Program. Indeed, it is clear from the facts alleged in the First Amended Complaint, that Martin was not selected.

DISCUSSION:

A. IS MARTIN A "PARTICIPANT" IN THE SPECIAL SEPARATIONS PROGRAM?

■ The central issue in this case is whether Martin has standing to bring this action. As argued by General Motors,

Martin's claims all rest on the presumption that he was a "participant" in the Special Separations Program, and Martin, in fact, alleges that he was a "participant" in the First Amended Complaint. Persons who are not "participants" in an employee benefits plan are generally not entitled to benefits or disclosure of plan documents from the plan administrators.

"Participant" is defined in 29 U.S.C. § 1002(7):

§ 1002. Definitions

For purposes of this subchapter:

\* \* \* \* \* \*

(7) The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7) (Supp.1990).

Before 1989, the judicial construction of this definition was subject to differing interpretations among the circuit courts of appeal. For example, the Sixth Circuit construed "participant" broadly, to encompass all persons "who are, or claim they are, entitled to receive a benefit from a pension plan":

> The United States district courts are not courts of general jurisdiction, of course, and before a federal court can decide a claim for relief, the court must be satisfied that Congress has empowered it to do so. While it is conceivable that plaintiffs in the case at bar may have meritorious claims arising under state law, in order to pursue those claims in federal court, they must demonstrate that they and their claims come within the terms of the statutory provisions they rely upon in their complaint as giving rise to federal court jurisdiction.

Standing

ERISA authorizes a "participant" to commence a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A participant may also sue to enforce provisions of ERISA. 29 U.S.C. § 1132(a)(3)(B)(ii)....

\* \* \* \* \* \*

In determining who is a "participant," for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ultimate issue of the merits of plaintiffs' claim that they are not receiving the full extent of the benefits to which they are entitled from the employee benefit plan which is paying them retirement benefits. The doctrine of standing is concerned with whether a person is the proper party to request adjudication of a particular issue, *Flast v. Cohen*, 392 U.S. 83, 101–102, 88 S.Ct. 1942, 1953–54, 20 L.Ed.2d 947 (1968), whether a person has alleged such a personal stake in the outcome of a justiciable controversy that he should be entitled to obtain its judicial resolution. *See Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Standing focuses on a person's effort to get his complaint before a court and not on the issue he wishes to have adjudicated. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982).

The question before us, then, is whether Congress intended that persons in plaintiffs' positions have the right to seek judicial relief. *It appears to us that the statute manifests an intention that the right to bring claims concerning pension benefits should be limited to those who are, or claim they are, entitled to receive a benefit from a pension plan.*

*Hughes v. General Motors Corp.*, 852 F.2d 568 (6th Cir.1988), *cert. den.*, 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 839 (1989) (emphasis added).

Viewed under this broad standard, it is clear that Martin would be deemed a "participant" simply because he claims he is entitled to receive benefits under the Special Separations Program. However, other courts of appeals have adopted a more restrictive construction of "participant" in light of the far-reaching remedial provisions of ERISA. *See, e.g., Kuntz v. Reese,* 785 F.2d 1410 (9th Cir.1986), *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986); *Saladino v. I.L.G.W.U. Nat. Retirement Fund,* 754 F.2d 473 (2d Cir.1985). In *Saladino,* the court interpreted "participant" in light of ERISA's mandatory disclosure provisions and the stiff penalties imposed on plan fiduciaries for their failure to comply:

> The term participant is of considerable importance within ERISA's statutory scheme because numerous rights under that scheme are limited to those who are included within that term. In addition to eligibility for attorney's fees under § 1132(g)(1), participants must be sent plan documents at specified times and intervals, § 1024(b)(1); may examine such documents at any time at specified places, § 1024(b)(2); must be sent annual financial information, § 1024(b)(3); must be sent on request copies of plan documents, § 1024(b)(4); must be sent on request once a year information as to the participant's accrued and nonforfeitable benefits, § 1025(a); and can enforce through a civil action in the federal courts ERISA rights, § 1132. The term "participant" itself is defined by 29 U.S.C. § 1002(7) as "any employee or former employee of an employer, or any member or former member of any employee organization, who is or may become eligible to receive a benefit...."

We believe that participant is limited to either employees in, or reasonably expected to be in, currently covered employment *or former employees with a colorable claim to vested benefits.* This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits "may become eligible." A *former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the term "may become eligible."*

Our view, moreover, is the only one consistent with the role accorded by the statutory scheme to those who fall within the term participant. The mandatory requirement that plans send certain documents at specified intervals and annual financial information to participants strongly suggests that this group must be easily identifiable and one with a substantial interest in the matters conveyed. Current employees or those reasonably expected to become such and persons with a colorable claim to vested benefits are in that category. Expansion of the group to former employees of many years past or others with no colorable claim to benefits would create uncertainties as to statutory obligations and impose great costs on pension plans for no legislative purpose. Similarly, the provision that plans inform participants who so request of their accrued and nonforfeitable benefits implies that the persons entitled to such disclosure have a demonstrable claim. We believe, therefore, that Congress intended the term participant to limit the various reporting and disclosure obligations imposed on plans to identifiable persons with a substantial interest in the matters conveyed and not to burden plans with the cost of reporting and disclosing to an amorphous, undefined group of individuals who lack any such interest. Any other reading of the statute would reduce the amounts available to actual beneficiaries of plans for no statutory purpose.

Agency interpretations of ERISA's provisions are consistent with this conclusion....

We note finally that our reading of the statute accords with that adopted by other circuits. *Weiss v. Sheet Metal Workers Local No. 544 Pension Trust,* 719 F.2d 302 (9th Cir.1983), *cert. denied,* [466] U.S. [972], 104 S.Ct. 2347, 80

L.Ed.2d 821 (1984); *Nugent v. Jesuit High School,* 625 F.2d 1285 (5th Cir. 1980).

It is clear in the instant case that Saladino is not a participant within the meaning of ERISA. The statutorily prescribed summary plan description which was provided to him before the litigation began and which was not contradicted by the various information provided thereafter made it amply clear that Saladino is not eligible for a pension. Indeed, it is undisputed that he lacks any colorable claim to eligibility, a fact made apparent to him by the summary plan description in 1981....

Appellant argues that a circularity is created by our definition of the term participant since only participants have a legally enforceable right to get a copy of a plan but a determination of whether one is a participant depends upon knowing the contents of the plan. Because we include within "participant" those persons with colorable claims to eligibility, the problem is more theoretical than real.

*Saladino,* 754 F.2d, at 476–477 (emphasis added) (footnotes omitted).[2]

Any apparent conflict between the Sixth Circuit's definition of "participant" and the definition adopted by the Second and Ninth Circuits was resolved recently by the Supreme Court in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), in favor of the definition adopted in *Saladino:*

> The Court of Appeals [below] noted that § 1132(a)(1) allows suits for benefits "by a participant or beneficiary." Finding that it would be illogical to say that a person could only bring a claim for benefits if he or she was entitled to benefits, the Court of Appeals reasoned that § 1132(a)(1) should be read to mean that " 'a civil action may be brought by *someone who claims to be* a participant or beneficiary.' " 828 F.2d 134, at 152 (CA 3 1987). It went on to conclude that the same interpretation should apply with re-
>
> spect to § 1024(b)(4): "A provision such as that one, entitling people to information on the extent of their benefits, would most sensibly extend both to people who are in fact entitled to a benefit under the plan and to those who claim to be but in fact are not." *Id.,* at 153.
>
> The Court of Appeals "concede[d] that it is expensive and inefficient to provide people with information about benefits— and to permit them to obtain damages if information is withheld—if they are clearly not entitled to the benefits about which they are informed." *Ibid.* It tried to solve this dilemma by suggesting that courts use discretion and not award damages if the employee's claim was not colorable or if the employer did not act in bad faith. There is, however, a more fundamental problem with the Court of Appeals' interpretation of the term "participant": it strays far from the statutory language. Congress did not say that all "claimants" could receive information about benefit plans. To say that a "participant" is any person who claims to be one begs the question of who is a "participant" and renders the definition set forth in § 1002(7) superfluous....
>
> In our view, the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," *Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d 473, 476 (CA2 1985), or former employees who "have ... a reasonable expectation of returning to covered employment" or who have a "colorable claim" to vested benefits. *Kuntz v. Reese,* 785 F.2d 1410, 1411 (CA9) (*per curiam*), cert. denied, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986). In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. "This view attributes conventional meanings to the statu-

---

**2.** The *Saladino* court's reasoning was followed by the Ninth Circuit Court of Appeals in *Kuntz* and apparently caused that court to vacate its prior panel decision which had adopted a broader definition of "participant." *See Kuntz,* 785 F.2d, at 1412.

**1354**

tory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.' " *Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d, at 476.

*Id.,* 109 S.Ct., at 957–958 (emphasis added).

Thus, since Martin does not claim that he reasonably expects to return to General Motors, the question presently before the Court is whether Martin has a "colorable claim to benefits." In light of the plan's provision that "management has the final decision as to whether it is in GM's best interest to separate the employe" and the undisputed fact that General Motors did not select him for Special Separations Program benefits, the Court is persuaded that Martin does not have a colorable claim to benefits. *See Bair v. General Motors Corp.,* 895 F.2d 1094, 1097–1098 (6th Cir. 1990) (employee's acceptance form reciting that "implementation of this special retirement is subject to the necessary approvals" does not give rise to an enforceable contract for benefits); *Fielding v. International Harvester Co.,* 815 F.2d 1254, 1256–1257 (9th Cir.1987) ("Special early retirement benefits ... granted at the option of the company" provision in summary plan description does not create a right to benefits by employees not selected by the company); *Walker v. Mountain States Tel. & Tel. Co.,* 645 F.Supp. 93, 96 (D.Colo.1986)

(employees were not "participants" in early retirement plan and lacked standing when they were not "individually or as a group designated by the Vice President–Human Resources as surplus" as required by the plan documents).

In the instant case, Martin's claim that he was eligible for benefits is not colorable because he was never selected and never offered the special incentives offered by General Motors to other employees to take an early retirement. According to the First Amended Complaint, Martin was, in General Motors' view, a "key employee," not one General Motors sought to terminate consistent with its scheduled staff reductions. Even if Martin were not a "key employee," it was apparently clear to General Motors that no special incentives were necessary to convince him to terminate his employment, since he voluntarily quit to pursue the Las Vegas job. Under the clear language in the Special Separations Program memorandum, Martin was not entitled to nominate himself for special retirement incentives without General Motors' approval.

Since 29 U.S.C. § 1132 [3] authorizes private civil actions only by "participants" or "beneficiaries," and Martin does not claim to be a beneficiary apart from his alleged status as a purported "participant" of the Special Separations Plan, the Court finds that he lacks standing to bring the instant civil enforcement action, and the case must therefore be dismissed. *Walker,* 645 F.Supp., at 95, 97.

---

**3.** § 1132. Civil enforcement

(a) Persons empowered to bring a civil action
A civil action may be brought—
(1) by a participant or beneficiary—
 (A) for the relief provided for in subsection (c) of this section, or
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of

the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;
(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or
(6) by the Secretary to collect any civil penalty under subsection (i) of this section.
29 U.S.C. § 1132(a).

## B. ERISA PREEMPTION OF STATE LAW CLAIMS FOR PERSONS OTHER THAN PARTICIPANTS

 Martin argues that it is too late for this Court to find that he is not a "participant." "The granting of Defendant's removal petition establishes two things as a matter of law: (1) the claim in question is pre-empted by ERISA and (2) the Plaintiff must have been a participant or beneficiary in the ERISA plan at the relevant times." (Plaintiff's Brief in Opposition to Motion to Dismiss, Par. 12, p. 8), citing, *Dodd v. John Hancock Mutual Life Insurance Company*, 688 F.Supp. 564, 568 (E.D.Cal.1988); *Turnbow v. Pacific Mutual Life Ins. Co.*, 104 Nev. 676, 765 P.2d 1160, 1162 (1988), *cert. den.*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). Indeed, it is true that the cited cases provide some support for the Plaintiff's position. In *Dodd*, the court said:

> In order for an individual to bring an action to recover benefits owed under an ERISA plan, the individual must be a "participant" or "beneficiary" of the plan. *See* 29 U.S.C. § 1132(a)(1)(B). Conversely, if plaintiff is not a "participant" or "beneficiary," he may sue under and seek the broader relief provided by state tort law, and the case must be remanded to state court to permit him to do so. Put another way, in order for plaintiff's state law claims to be completely preempted for removal purposes, he must be entitled to bring an ERISA claim; that is, he must have been a "participant" or "beneficiary" in the corporation's ERISA plan at the relevant times.

*Dodd*, 688 F.Supp., at 568.

Martin argues that it follows from the above-quoted proposition that Judge Suhrheinrich's March 19, 1990 Memorandum Opinion and Order must be premised upon an actual finding, by Judge Suhrheinrich, that Martin is a "participant" in the Special Separation Plan. Since Judge Suhrheinrich found that "plaintiff's state law claims are pre-empted" (March 19, 1990 Memorandum Opinion and Order, p. 3), under the above-quoted language in *Dodd*, "he must have been a 'participant' or 'beneficiary' in the corporation's ERISA plan at the relevant times."

Although this argument has some superficial appeal, the Court must reject it for several reasons. First of all, nowhere in the March 19, 1990 Memorandum Opinion and Order does Judge Suhrheinrich explicitly make a finding that Martin was a "participant" in the Special Separations Program. Second, even if such finding were indeed implied in Judge Suhrheinrich's opinion, this Court is not conclusively bound by that finding. *Cale v. Johnson*, 861 F.2d 943, 947–948 (6th Cir.1988).

Third, and most important, this Court declines to adopt the view expressed in *Dodd*. The district court's opinion in *Dodd* presumes that ERISA preempts only those state law causes of action for which ERISA itself provides a remedy. This presumption contradicts the explicit language of the Supreme Court's opinion in *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).[4] In *Dedeaux*, the Supreme Court said:

> The Solicitor General, for the United States as *amicus curiae*, argues that Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) [29 U.S.C. § 1132(a)] be the exclusive vehicle for actions by ERISA–plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress. Brief for United States as *Amicus Curiae* 18–19. We agree. The conclusion that § 502(a) was intended to be exclusive is supported, first, by the language and structure of the civil enforcement provisions, and second, by legislative history in which Congress declared that the pre-emptive force of § 502(a) was modeled on the exclusive

---

**4.** In addition, the Court notes that the district court's opinion in *Dodd* predates the Supreme Court's holding, in *Firestone, supra,* that ERISA's definition of "participant" excludes those who claim to be a participant but who do not have a colorable claim for benefits.

remedy provided by § 301 of the Labor-Management Relations Act [1947] (LMRA), 61 Stat. 156, 29 U.S.C. § 185.

The civil enforcement scheme of § 502(a) is one of the essential tools for accomplishing the stated purposes of ERISA. The civil enforcement scheme is sandwiched between two other ERISA provisions relevant to enforcement of ERISA and to the processing of a claim for benefits under an employee benefit plan. Section 501, 29 U.S.C. § 1131, authorizes criminal penalties for violations of the reporting and disclosure provisions of ERISA. Section 503, 29 U.S.C. § 1133, requires every employee benefit plan to comply with Department of Labor regulations on giving notice to any participant or beneficiary whose claim for benefits has been denied, and affording a reasonable opportunity for review of the decision denying the claim. Under the civil enforcement provisions of § 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits. A participant or beneficiary may also bring a cause of action for breach of fiduciary duty, and under this cause of action may seek removal of the fiduciary. §§ 502(a)(2), 409. In an action under these civil enforcement provisions, the court in its discretion may allow an award of attorney's fees to either party. § 502(g). See *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). In *Russell*, we concluded that ERISA's breach of fiduciary duty provision, § 409(a), 29 U.S.C. § 1109(a), provided no express authority for an award of punitive damages to a beneficiary. Moreover, we declined to find an implied

cause of action for punitive damages in that section, noting that " '[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.' " *Russell, supra,* at 147, 105 S.Ct., at 3093, quoting *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 97, 101 S.Ct. 1571, 1583, 67 L.Ed.2d 750 (1981). Our examination of these provisions made us "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." *Russell, supra,* 473 U.S., at 147, 105 S.Ct., at 3093.

In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. *The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.* "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Russell, supra,* at 146, 105 S.Ct., at 3093 (emphasis in original).

*Id.,* 107 S.Ct., at 1555–1556 (emphasis added).

This Court recognizes that the Supreme Court's discussion in *Dedeaux* could be interpreted to be limited to "remedies available to participants and beneficiaries." *Id.,* at 56, 107 S.Ct. at 1558.[5] However, this Court is convinced that the reasoning in *Dedeaux* is equally applicable to remedies

---

5. The Supreme Court's ultimate holding in *Dedeaux* is that an acknowledged participant in an employee benefits plan could not assert a cause of action for "tortious breach of contract"

against the insurer under Mississippi law, because all such causes of action are preempted by ERISA.

available to persons who *claim* to be "participants," as does Martin in the instant case, but, in fact, are not. It is well to remember at this point that the Court has found that Martin is not a "participant" in the Special Separations Program, under the Supreme Court's definition of "participant" in *Firestone*, only because he does not have a "colorable claim to benefits." Thus, this finding, although couched in the language of standing, is really a substantive determination that none of Martin's rights under ERISA have been violated. Specifically, because Martin has no colorable claim to

benefits, he was not entitled to receive the specific disclosures and other actions on General Motors' part that ERISA otherwise requires for plan "participants" and "beneficiaries."

This Court is convinced that the legislative purpose discussed by the Supreme Court in *Dedeaux* [6] would be equally "undermined" if ERISA were construed to restrict the remedies of "participants" with colorable claims to those found in ERISA and, at the same time, permit persons without colorable claims the full panoply of

**6.** "The legislative history demonstrates that the pre-emptive force of § 502(a) was modeled after § 301 of the Labor–Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185.

"The Conference Report on ERISA describing the civil enforcement provisions of § 502(a) says:

'Under the conference agreement, civil actions may be brought by a participant or beneficiary to recover benefits due under the plan, to clarify rights to receive future benefits under the plan, and for relief from breach of fiduciary responsibility.... [W]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. *All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947.*' H.R.Conf.Rep. No. 93–1280, p. 327 (1974), U.S.Code Cong. & Admin.News 1974, pp. 4639, 5107 (emphasis added).

"Congress was well aware that the powerful pre-emptive force of § 301 of LMRA displaced all state actions for violation of contracts between an employer and a labor organization, even when the state action purported to authorize a remedy unavailable under the federal provision. Section 301 pre-empts any 'state-law claim [whose resolution] is substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract.' *Allis–Chalmers Corp. v. Lueck,* 471 U.S. [202], at 220, 105 S.Ct. [1904], at 1916 [85 L.Ed.2d 206 (1985) ]. As we observed in *Allis–Chalmers,* the broad pre-emptive effect of § 301 was first analyzed in *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). In *Lucas Flour* the Court found that '[t]he dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute.' *Id.,* at 103, 82 S.Ct., at 576. '[I]n enacting § 301 Congress intended doctrines of

federal labor law uniformly to prevail over inconsistent local rules.' *Id.,* at 104, 82 S.Ct., 577. Indeed, for purposes of determining federal jurisdiction, this Court has singled out § 301 of the LMRA as having 'pre-emptive force ... so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." ' Any such suit is purely a creature of federal law. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420, referring to *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

"Congress' specific reference to § 301 of the LMRA to describe the civil enforcement scheme of ERISA makes clear its intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a). See also H.R. Rep. No. 93–533, p. 12 (1973), U.S.Code Cong. & Admin.News 1974, p. 4639, reprinted in 2 Senate Committee on Labor and Public Welfare, Legislative History of ERISA, 94th Cong., 2d Sess., 2359 (Comm.Print 1976) ('The uniformity of decision which the Act is designed to foster will help administrators, fiduciaries and participants to predict the legality of proposed actions without the necessity of reference to varying state laws'); 120 Cong.Rec. 29933 (1974) (remarks of Sen. Williams) (suits involving claims for benefits 'will be regarded as arising under the laws of the United States, in similar fashion to those brought under section 301 of the Labor Management Relations Act'); *id.,* at 29942 (remarks of Sen. Javits) ('[i]t is also intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans'). The expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop, indeed, the entire comparison of ERISA's § 502(a) to § 301 of the LMRA, would make little sense if the remedies available to ERISA participants and beneficiaries under § 502(a) could be supplemented or supplanted by varying state laws."

rights that exist under state law. Congress simply could not have intended to provide wider protections to persons without a colorable claim for benefits. Instead, by limiting ERISA's remedies to persons who qualify as "participants," Congress intended to deny remedies—under ERISA as well as state law—to persons without a colorable claim to benefits.

Therefore, the Court concludes that ERISA preempts state law causes of action alike with respect to both persons who are actually "participants" or "beneficiaries" of employee benefit plans and persons who *claim* to be "participants" or "beneficiaries" of employee benefit plans.[7] It follows that Judge Suhrheinrich's determination that Martin's state law causes of action are preempted by ERISA does not in any way imply a finding that Martin is a true "participant" in the Special Separations Program. *See Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund,* 794 F.2d 221, 235–236 (6th Cir.1986) (federal common law preempts all state causes of action on employer's part to recover contributions mistakenly paid to ERISA plan even though ERISA neither creates nor implies a cause of action in favor of "employers").

## C. FEDERAL JURISDICTION

■ It also follows from this analysis that the Court does not lack federal question jurisdiction over this case, and there is, therefore, no need to remand the case to state court simply because the Court has found that Martin lacks "standing" to bring this ERISA enforcement action. As noted above, what the Court has really found is that Martin lacks substantive rights under ERISA's remedial provisions; he lacks a "colorable claim." *See Whit-*

*Dedeaux,* 107 S.Ct., at 1557–1558.

7. The Court also notes, in this respect, that the express preemption provision in ERISA is not predicated on a finding that the claimant is an actual "participant" or "beneficiary" of a plan. Rather, the focus of the statute is whether the state laws "relate to any employee benefit plan":

§ 1144. Other laws
 (a) Supersedure; effective date

*worth Bros.,* 794 F.2d, at 226–227 n. 7. The Supreme Court's interpretation of the term, "participant," in *Firestone* requires this Court to make the substantive determination whether Martin has a colorable claim. To the extent that case decisions predating *Firestone* state or imply that federal courts do not have subject-matter jurisdiction to hear an ERISA-type claim once the claimant is found not to be a "participant" or "beneficiary" of an employee benefits plan, *e.g., Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan,* 883 F.2d 345, 348 (5th Cir.1989); *Dodd, supra,* 688 F.Supp., at 588, the Court finds those decisions no longer applicable. Consequently, the Court's determination here that Martin is not entitled to recover under ERISA constitutes a decision on the merits, and the Court will dismiss this case with prejudice. *See Randell v. New Orleans Public Service, Inc.,* 733 F.Supp. 45, 48 (E.D.La.1990) (judgment entered against plaintiffs who were found not to be participants under plan).

## D. ATTORNEYS' FEES AND COSTS

■ General Motors seeks to recover its attorneys' fees and costs for defending this action, under 29 U.S.C. § 1132(g)(1). That statute provides:

§ 1132. Civil enforcement

 \* \* \* \* \* \*

 (g) Attorney's fees and costs; awards in actions involving delinquent contributions

 (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

Except as provided in subsection (b) of this section, the provisions of this subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.
29 U.S.C. § 1144(a) (emphasis added).

29 U.S.C. § 1132(g).

The Sixth Circuit has recently restated the standards governing the award of attorneys' fees and costs under this statute:

> Plaintiff-appellant contends that he is entitled to an award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1). The award of attorney fees under the Employee Retirement Income Security Act of 1974 ... lies in the discretion of the trial court by statute. (29 U.S.C. § 1132(g)(1).) Thus, this Court can reverse a decision of the trial court only upon a showing of an abuse of discretion, which will not be found unless the record clearly supports such a conclusion.
>
> The Sixth Circuit has established the criteria for the Court to consider in the awarding of attorney fees and costs under ERISA. *Central States Pension Fund v. 888 Corporation,* 813 F.2d 760 (6th Cir.1987) has established the following criteria to be considered:
> (1) The degree of the opposing party's culpability or bad faith;
> (2) The ability of the opposing party to satisfy an award of attorney's fees;
> (3) Whether an award of fees against the opposing party would deter others from action in similar circumstances;
> (4) Whether the party requesting fees sought to benefit all participants and beneficiaries of a multi-employer plan or to resolve a significant legal question; and
> (5) The relative merits of the parties' position.

*Sweet v. Consolidated Aluminum Corp.,* 913 F.2d 268, 271 (6th Cir.1990) (citations omitted).

In the instant case, although the Court has found that Martin does not have a colorable claim, he has at least constructed a colorable argument that he should either be entitled to relief under ERISA or else be free to pursue alternative remedies under state law. In addition, in view of the unsettled nature of the law in this area prior to the Supreme Court's 1989 decision in *Firestone* and issues surrounding the applicability of that decision to specific factual situations, the Court finds that his conduct of this case did not exhibit bad faith or culpability, and an award of attorneys' fees is not necessary to deter others similarly situated. Therefore, the Court will exercise its statutory discretion to deny General Motors' request for attorneys' fees in the instant case.

CONCLUSION:

For all of the reasons stated herein, and the Court being otherwise fully advised in the premises;

NOW THEREFORE;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the instant case be and hereby is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that General Motors' request for attorneys' fees and costs is DENIED.

LET JUDGMENT BE ENTERED ENTERED ACCORDINGLY.