James C. DODD, individually, and as Guardian ad Litem of Constance Dodd, Plaintiff,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, et al., Defendants.

No. Civ. S–87–644 LKK.

United States District Court, E.D. California.

June 14, 1988.

Nathaniel Colley, Colley, Lindsey & Colley, Sacramento, Cal., for plaintiff.

David A. Riegels, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for defendant John Hancock Mut. Life Ins. Co.

Alesa Schachter, Johnson & Hoffman, Sacramento, Cal., Paul E. Glas, Barger & Wolen, San Francisco, Cal., for defendants Ass'n Adm'rs. & Walter T. Pregizer.

## ORDER

KARLTON, Chief Judge.

James C. Dodd and his wife are the sole owners of all of the stock of James C. Dodd & Associates, Inc., a California corporation. That corporation enrolled in a group health plan issued by defendant John Hancock Mutual Life Insurance Company ("John Hancock") to the Trustees of the California Council of the American Institute of Architects. Plaintiff's wife suffered a stroke which he alleges requires her to have 24–hour nursing care. When the defendant insurance company declined to pay for the care, plaintiff brought suit in Sacramento Superior Court, alleging violation of various state statutory and common law rights. Defendants removed the action to this court on the grounds that plaintiff's state law claims were completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.,* and that the action was therefore removable under the authority of *Metropolitan Life Insurance Company v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), and *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

Defendants subsequently filed a motion for summary judgment on the grounds that plaintiff's claims under the California Insurance Code and for extracontractual damages are preempted by ERISA. Plaintiff opposed the motion, asserting that Dodd & Associates, plaintiff's purported employer, did not have an ERISA employee welfare benefit plan at any relevant time and/or that even if such a plan existed, the plaintiff was not a participant in that plan. In light of plaintiff's argument, the court continued defendants' motion and ordered plaintiff to bring on a motion to remand.

I

## STANDARDS

It is well-settled that defendants, as the parties removing an action to federal court, have the burden of establishing removal jurisdiction. *Salveson v. Western States' Bankcard Ass'n,* 731 F.2d 1423, 1426 (9th Cir.1984). Because the "removal statutes are strictly construed against removal," *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir.1979),

generally speaking, doubts about removal must be resolved in favor of remand. *National Audubon Society v. Dept. of Water & Power of the City of Los Angeles*, 496 F.Supp. 499, 507 (E.D.Cal.1980). In the instant case, however, there is no dispute about the historical facts, and the only question is whether, under those facts, ERISA governs the relationship between plaintiff and defendant, a pure question of law.

## II

## MOTION TO REMAND

In *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. ——, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Supreme Court held that the preemptive force of ERISA is so extraordinary that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* 481 U.S. at ——, 107 S.Ct. at 1547, 95 L.Ed.2d at 64. Thus, whether this action was properly removed depends on whether plaintiff's state law claims are completely preempted by ERISA, which, in turn, depends on whether those claims come "within the scope of [the] civil enforcement provisions of § 502(a)" of ERISA, *id.* 481 U.S. at ——, 107 S.Ct. at 1548, 95 L.Ed.2d at 65; if they are not within the ambit of the federal statute, the matter must be remanded to state court where plaintiff will be free to pursue his state remedies.

Section 502(a) of ERISA, 29 U.S.C. § 1132(a), provides in relevant part that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To decide the motion to remand, then, two questions must be re-

solved: (1) was the John Hancock insurance policy at issue purchased by James C. Dodd and Associates, Inc. pursuant to an employee benefit plan governed by ERISA and, (2) if so, was James C. Dodd a participant in that plan within the meaning of ERISA?[1]

### A. *Was There An Employee Welfare Benefit Plan Within the Meaning of ERISA?*

The statute defines an employee welfare benefit plan, in relevant part, as:

[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident disability, death or unemployment....

29 U.S.C. § 1002(1). In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (en banc), the court examined the prerequisites for finding the existence of an "employee welfare benefit plan" under this provision.[2]

By definition, then, a welfare plan requires (1) a "plan, fund or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

---

1. The parties focus their dispute on Mr. Dodd's status. Thus, it appears to be undisputed that if Mr. Dodd was a participant in an ERISA plan, Mrs. Dodd was either a participant in the plan also, or a beneficiary thereof; in either event, it appears to be undisputed that if Mr. Dodd's claims are governed by ERISA, Mrs. Dodd's are also governed by the federal statute.

2. *Donovan* has been cited as authority for various propositions in at least three Ninth Circuit cases. *See Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir.1985); *Credit Managers Ass'n v. Kennesaw Life & Acc. Ins.*, 809 F.2d 617 (9th Cir.1987).

*Donovan,* 688 F.2d at 1371. The court thought that the third, fourth and fifth prerequisites were "either self-explanatory or defined by statute." *Id.* It concluded that:

> The gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program.

*Donovan,* 688 F.2d at 1371. As I discuss in section II–B, *infra,* the demarcation between employer and employee is not discerned without some difficulty in the instant case. For purposes of this section, however, the focus is on whether James C. Dodd & Associates, Inc. "established or maintained" a "plan, fund, or program."

■ The *Donovan* court held that "a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 1373. Although the plan need not be formalized in writing, *Scott v. Gulf Oil Corp.,* 754 F.2d at 1503, a mere decision to extend benefits does not, without more, amount to the establishment of a plan. *Donovan,* 688 F.2d at 1373. Acts which "record, exemplify or implement the decision [are] direct or circumstantial evidence that the decision has become reality" and it is that reality which is determinative. *Id.* The *Donovan* court specifically noted that:

> [T]he purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established.

*Donovan,* 688 F.2d at 1373.

Department of Labor regulations provide that the definition of an "employee welfare benefit plan" does not include a group insurance policy if the employer merely advertises the program and makes no contributions on behalf of the employees or profit from the program. *Id.* at 1373 n. 11, *citing* 29 C.F.R. § 2510.3–1(j). The Ninth Circuit seems to have construed this limitation narrowly. The court has noted that "[a]n employer, however, can establish an ERISA plan rather easily. Even if an employer does no more than arrange for a 'group-type insurance program,' it can establish an ERISA plan, unless it is a mere advertiser who makes no contributions on behalf of its employees." *Credit Managers Ass'n v. Kennesaw Life & Acc. Ins.,* 809 F.2d 617, 625 (9th Cir.1987). In *Donovan,* the court found that employers purchasing insurance through an insurance trust "either pursuant to [a collective bargaining] agreement or pursuant to a continuing practice of purchasing the insurance for a class of employees" had established employee welfare benefit plans. *Id.* at 1374.

■ In the instant case, the undisputed evidence shows that in 1971, James C. Dodd enrolled in the group insurance plan issued by John Hancock to the Trustees of The California Council, The American Institute of Architects. Declaration of Egon Bartetzko; Deposition of James C. Dodd at 7:17.[3] James C. Dodd & Associates, Inc. was incorporated in 1976, *id.* at 3:15–17, and the corporation enrolled in the group insurance plan thereafter. Bartetzko Declaration. That policy provided insurance benefits to the employees of the corporation, Dodd Deposition at 8:1–4, and the corporation paid the premiums for its employees. *Id.* at 11:16–22.[4] The procedures

---

3. It cannot be determined from the record made by the parties whether at the time of the initial purchase, Dodd had any employees, and if so, whether the benefits of the group insurance policy were extended to such employees.

4. The premiums were paid to the CCAIA Trust, which in turn paid the premiums to John Hancock. Bartetzko Declaration. The corporation does not pay the premiums for employees' dependents. Dodd Deposition at 21:19–21.

for receiving benefits are set forth in the Employer Administration Manual, the certificate of insurance, and the employee booklet, all of which are distributed to participating employers, including James C. Dodd & Associates, Inc. *Id.*[5]

The record demonstrates that the premiums for employees enrolled in the group insurance policy at issue were paid by James C. Dodd & Associates, Inc. on a continuing basis over several years. The intended benefits were those provided under the policy, and the intended beneficiaries were the employees of the corporation. Information concerning the procedures for receiving benefits was provided to the corporation and made available to its employees. All of this is sufficient to demonstrate the existence of an employee benefit plan established or maintained by James C. Dodd & Associates, Inc. I conclude that the corporation did have an "employee welfare benefit plan" within the meaning of ERISA.

### B. *Was James C. Dodd a "Participant" in the Plan?*

The decision and implementation of the decision to provide benefits to employees which demonstrates the existence of an employee benefit plan is only half the inquiry. The question of whether Mr. Dodd is an employee or an employer is also central to disposition of this motion. The fact that plaintiff is enrolled in the same group insurance policy purchased to provide benefits to employees does not necessarily mean that he is an employee or a participant in the benefit plan. The insurance policy, after all, is not the same thing as the ERISA plan; it is merely evidence of the establishment of such a plan. *Donovan*, 688 F.2d at 1373.

■ In order for an individual to bring an action to recover benefits owed under an ERISA plan, the individual must be a "participant" or "beneficiary" of the plan. *See* 29 U.S.C. § 1132(a)(1)(B). Conversely, if plaintiff is not a "participant" or "beneficiary," he may sue under and seek the broader relief provided by state tort law, and the case must be remanded to state court to permit him to do so. Put another way, in order for plaintiff's state law claims to be completely preempted for removal purposes, he must be entitled to bring an ERISA claim; that is, he must have been a "participant" or "beneficiary" in the corporation's ERISA plan at the relevant times.

■ The question presented is one of statutory construction: is the owner/principal stockholder and salaried president of a corporation an "employee" or an "employer" under ERISA? In the absence of a binding construction of the statute, the court in construing a statute undertakes a sequential analysis, beginning with an examination of the plain language of the statute; if that examination is non-dispositive, it is followed by an examination of the legislative history, and finally if an ambiguity remains, it is resolved by application of textual and extrinsic aids to construction. *Catholic Social Services, Inc. v. Meese,* 664 F.Supp. 1378, 1382–83 (E.D.Cal. 1987).

The question tendered appears to be one of first impression. I thus turn to the text of the statute. The statute defines a "participant" as:

[A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of

---

**5.** The California Council, the American Institute of Architects Group Insurance Plan holds itself out as an ERISA plan. *See, e.g.,* Defendants' Exhibit F. Although multiple employer trusts ("METS") are not themselves ERISA plans, *see Donovan v. Dillingham,* 688 F.2d at 1372, they may be ERISA fiduciaries. *Id.* at 1372 n. 10. The parties have not briefed the question of whether the CCAIA may establish or maintain an ERISA plan, *see Credit Manager's Ass'n,* 809

F.2d at 625; *see also Taggart Corp. v. Life & Health Benefits Admin.,* 617 F.2d 1208, 1210 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981). Because I determine in the text that James C. Dodd & Associates, Inc.'s participation in the group insurance program establishes the existence of an ERISA plan at the corporate level, I need not decide whether the CCAIA Group Insurance Plan is also an ERISA plan.

such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit. 29 U.S.C. § 1002(7). Under this provision, plaintiff is only a participant in the plan if he is an employee. In determining whether plaintiff is an employee for ERISA purposes, resort must first be had to a series of statutory definitions. As I have previously explained, when Congress defines a term it uses in a statute, that definition, rather than any ordinary meaning governs construction of the statute. *Sacramento Regional County Sanitation District (SRCSD) v. Thomas (EPA),* 668 F.Supp. 1427, 1431 (E.D.Cal.1987).

The statute defines employee as "any individual employed by an employer." 29 U.S.C. § 1002(6). An employer is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). A "person" is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). While these statutory definitions are informative, they are not dispositive. Thus, the definitions do not preclude the possibility that an individual may have dual status as both employer and employee, nor do they define precisely whether owners and stockholders of corporations are employees, employers, or both. Because the statute's terms are not conclusive, ambiguity exists and resort may be had to the legislative history to resolve the question of construction. *Catholic Social Services,* 685 F.Supp. 1149 (E.D.Cal.1988).

The legislative history is also non-dispositive, but again does cast some light on the issue at bar. The Second Circuit, in examining that history, has explained that Title I of ERISA was adopted in part "to remedy the abuses that existed in the handling and management of welfare and pension plan assets that constitute part of the fringe and retirement benefits held in trust for workers in traditional employer-employee relationships. *See* S.Rep. No. 127, 93rd Cong., 1st Sess. 3–5, *reprinted in* 1974 U.S. Code Cong. & Ad. News 4639, 4838, 4839–42." *Schwartz v. Gordon,* 761 F.2d 864, 868 (2d Cir.1985). The court went on to suggest that the remedial scheme established in Title I to protect workers employed by others was "not necessary for the protection of self-employed persons" who, in voluntarily deciding to set aside income for retirement have "complete control over the amount, investment and form of the fund created ... for ... retirement." *Id.*

While clearly the legislative history, as explicated in *Schwartz,* does not resolve the issue at bar, it does suggest that owners of corporations were not necessarily within the class intended to be protected by the statute. Indeed, on the basis, in part, of the foregoing legislative history, the court in *Schwartz* upheld the "distinction drawn by the Secretary of Labor between the definition of 'employee benefit plan' as used in Title I for protection of workers employed by others and the definition of the term as used in Title II to insure tax benefits on an equal basis to self-employed individuals and others with respect to their retirement funds." *Id.* The regulation upheld by the Second Circuit is relied on by plaintiff here.

Because neither application of the plain meaning rule nor examination of the legislative history is dispositive, I turn to extrinsic aids to construction. A primary extrinsic aid to construction of a statute is an administrative interpretation issued by an agency charged with its application. As I have previously said, when such interpretations may properly be examined, they are to be deferred to "if the interpretation is a linquistically possible one and is consistent with the statutory purpose." *Catholic Social Services,* 685 F.Supp. at 1152 (E.D. Cal.1988).

Plaintiff places principal reliance on regulations issued by the Secretary of Labor to define "employee benefit plan" to support his contention that he is not an "employee." 29 C.F.R. § 2510.3–3 provides, es-

sentially, that plans which cover only self-employed individuals are excluded from ERISA. However, plans which cover both self-employed individuals and their employees are governed by ERISA. 29 C.F.R. § 2510.3–3(b) [6]; *see also Schwartz v. Gordon*, 761 F.2d at 869. The question is, are owner-employees whose benefits are commingled with those of other employees in such a plan "participants" in the plan? Put another way, even though owner-employees are not counted as employees for the purpose of determining whether a plan is governed by ERISA, if the plan is covered by ERISA, are such individuals "employees" for other purposes?

The regulatory definition of employees expressly limits itself to the purposes of the regulation, i.e., clarifying the definition of employee benefit plan. Plaintiff contends that, despite the regulation's provisions, the definition of employees found in 29 C.F.R. § 2510.3–3(c)(1) is not confined to that section, but limits the definition of employee throughout Title I. Moreover, in *Peckham v. Board of Trustees*, 653 F.2d 424 (10th Cir.1981), the court apparently assumed, without discussion, that the regulation excluded self-employed individuals from the status of "employees" for all purposes. *Id.* at 427. The court concluded that dual status individuals, i.e., those who were both employer and employee, were excluded from ERISA benefit plans.

As a matter of interpretation of 29 C.F.R. § 2510.3(3), *vel non*, plaintiff's position and the implied holding of the *Peckham* court seems unwarranted. As I have previously noted, regulations should be interpreted "by application of the standard canons of statutory construction." *Diaz v. INS*, 648 F.Supp. 638, 644 (E.D.Cal.1986). Accordingly, construction of the regulation should commence with application of the plain meaning rule and thus, the Secretary's intention to limit the scope of his definition to employee benefit plans should be honored.

The *Peckham* court's decision, however, also relied in part on the statutory provision that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan." 29 U.S.C. § 1103(c)(1), *quoted in Peckham*, at 427. By implication, *Peckham* held that the status of employer precluded the status of participant for ERISA purposes. On analysis, however, the provisions of § 1103(c)(1) do not aid in resolution of the matter at bar. The fact that an employer is covered by the same insurance policy as his employees does not violate the plain terms of § 1103(c)(1); put another way, if an owner of the corporation owns his own insurance, even if commingled with insurance which is part of a benefit plan, payment to him of insurance proceeds owed him under his insurance is not distribution of an asset of the plan. As noted above, in *Schwartz*, it was recognized that 29 C.F.R. § 2510.3–3(b) contemplated the existence of covered plans which included assets of employees and self-employed employers; unfortunately, the court did not

---

**6.** The regulation reads: "(a) *General.* This section clarifies the definition in section 3(3) of the term 'employee benefit plan' for purposes of Title I of the Act and this chapter. It states a general principle which can be applied to a large class of plans to determine whether they constitute employee benefit plans within the meaning of section 3(3) of the Act. Under section 4(a) of the Act, only employee benefit plans within the meaning of section 3(3) are subject to Title I.

"(b) *Plans without employees.* For purposes of Title I of the Act and this chapter, the term 'employee benefit plan' shall not include any plan, fund or program, under which no employees are participants under the plan, as defined in paragraph (d) of this section. For example, a so-called 'Keogh' or 'H.R. 10' plan under which

only partners or only a sole proprietor are participants covered under the plan will not be covered under Title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under Title I. Similarly, partnership buyout agreements described in section 736 of the Internal Revenue Code of 1954 will not be subject to Title I.

"(c) *Employees.* For purposes of this section: (1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse...."

discuss the issue of whether the self-employed individual would be a participant in the plan under those circumstances. *Id.* at 869. Because the regulation is not dispositive, I now turn to cases which, although not directly in point, by analogy may aid in construction.

While the precise issue here has not been previously resolved, the question of whether the shareholders or officers of a corporation are "employers" for ERISA purposes has arisen in the context of suits seeking to hold the shareholders liable for the corporation's unpaid contributions to a benefit plan. *See, e.g., Combs v. Sun–Up Coal Co., Inc.,* 634 F.Supp. 13, 17–18 (D.D.C. 1985). The courts are divided as to "whether corporate officers and dominant shareholders can ever be considered 'employers' within the meaning of section 3(5)." *Id.* at 17. Those courts which have held that officers and shareholders were not employers have relied in large measure on the omission of officers and shareholders from ERISA's specific enumeration of "persons" in the statutory definition. *See Solomon v. Klein,* 770 F.2d 352, 354 (3d Cir.1985); *see also Combs v. Indyk,* 554 F.Supp. 573, 575 (W.D.Pa.1982). Those courts which hold that officers who are shareholders are employers rely on interpretations of the parallel definition of "employer" found in the Fair Labor Standards Act. *See Mass. State Carpenters Pension v. Atlantic Diving,* 635 F.Supp. 9, 13 (D.Mass.1984).

In each case, the question before the court was whether to impose liability on a corporate officer or shareholder for the unpaid contributions of the firm. The cases employ various tests to determine whether, in essence, to pierce the corporate veil. *See, e.g., Operating Engineers Pension Trust v. Reed,* 726 F.2d 513, 515 (9th Cir.1984) ("owner of corporation will be held personally liable for trust fund contributions if (1) there is little or no respect shown to the separate identity of the corporation; (2) recognition of the corporation as a separate entity would result in injustice to the litigants; and (3) there was fraudulent intent behind the incorporation"); *Carpenters Pension,* 635 F.Supp. at 13–14 (applying "economic reality" test to determine whether corporate officers and stockholders are "employers" within the meaning of ERISA).

As a general matter, "there is presumption that a corporation is a separate entity from its shareholders or officers and the party who wishes to pierce the corporate veil bears the burden of proving that there are substantial reasons for doing so." *Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Hroch,* 757 F.2d 184, 190 (8th Cir.1985). In *Operating Engineers Pension Trust,* the Ninth Circuit recognized the separate status of the corporate form, holding that when a sole proprietor incorporated, he ceased being the employer and the corporation became the employer. As a result, the court held that "absent special circumstances," the corporation should be solely liable for unpaid contributions to an ERISA trust. 726 F.2d at 513.

While the question is a close one, I conclude that an owner of a corporation who is also an employee of the corporation shall be treated as an employee for purposes of determining whether the owner is a participant in such a plan within the meaning of ERISA. Although the language of the statute is ambiguous, and the legislative history suggests that the purpose of the statute does not require inclusion of employer/owners as employees, overall the most natural reading of the statute includes all corporate employees, whatever capital interest they may have in the corporation. It seems proper to hold that the regulatory definition is limited to its self-proclaimed purpose of clarifying when a plan is covered by ERISA and does not modify the statutory definition of employee for all purposes. More to the point, when self-employed individuals elect to incorporate and the corporation employs others, there is simply no basis in ERISA for disregarding the corporate form. *See Operating Engineers Pension Trust,* 726 F.2d at 515.

According to the record, plaintiff was a salaried employee of James C. Dodd

& Associates, Inc. The corporation was Mr. Dodd's employer. It is plain from the record that Mr. Dodd was an individual employed by an employer; he is, therefore, an "employee" and a "participant" in the ERISA plan. Accordingly, plaintiff's motion to remand must be DENIED.

### III

### PREEMPTION OF STATE CLAIM

■ Having determined that plaintiff's claims are governed by ERISA, I now turn to defendants' motion. Defendants contend that plaintiff's claims for extracontractual damages and his claim under section 790.03 of the California Insurance Code are preempted by ERISA.

In *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court held that extracontractual damages were not available in actions brought under section 409 of ERISA, 29 U.S.C. § 1109. In *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir.1986), the Ninth Circuit extended the *Russell* rule to actions under section 502(a)(3), 29 U.S.C. § 1132(a)(3), a question expressly reserved by the Supreme Court in *Russell.*

Both section 409 and section 502(a)(3) provide for equitable relief. By contrast, the instant action would be one under section 502(a)(1) to recover benefits. Dicta in *Russell,* however, precludes the award of extracontractual damages under section 502(a)(1). In *Russell,* the Supreme Court noted that section 502(a)(1)(B) "says nothing about the recovery of extra-contractual damages." *Id.* 473 U.S. at 144, 105 S.Ct. at 3091. Thus, the Court found, "there really is nothing at all in the statutory text to support the conclusion that [an administrator's delay in processing a disputed claim] gives rise to a private right of action for compensatory or punitive relief." *Id.* In addition, the Court found that "[t]he six carefully integrated civil enforcement provisions in § 502(a) of the statute as finally enacted, ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 146, 105 S.Ct. at 3092. *See also Sokol,* at 535 ("[t]here is considerable support in *Russell* for the proposition that *no* provision in ERISA authorizes the award of extra-contractual damages").[7] Accordingly, I find that plaintiff is precluded from seeking extracontractual damages on his ERISA claim.

Finally, the court will defer ruling on the viability of plaintiff's section 790.03 claim. That issue is presently pending before the Ninth Circuit. Defendants have indicated that they intend to bring on a summary judgment motion directed at the substantive ERISA claim. The court will defer ruling on the issue of section 790.03 preemption until that motion. Plaintiff is hereby granted thirty (30) days to file an amended complaint consistent with this opinion.

### CONCLUSION

For all of the above reasons, IT IS HEREBY ORDERED:

1. Plaintiff motion for remand is DENIED;

2. Defendants' motion for summary judgment relative to extra-contractual damages is GRANTED;

3. A ruling on defendants' motion re Insurance Code section 790.03 is DEFERRED;

---

7. In a concurring opinion in *Russell,* Justice Brennan suggests that courts confronted with a prayer for extracontractual damages should first ascertain whether trust and pension law as developed by state and federal courts provide for such recovery, and then should consider whether awarding such relief "would significantly conflict with some other aspect of the ERISA scheme," always keeping in mind the purpose of ERISA—"enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries." *Id.* 473 U.S. at 157–58, 105 S.Ct. at 3098. While the approach suggested would appear to better serve ERISA's purpose, I believe that the dicta in *Russell* and *Sokol* preclude such an analysis. "As a subordinate court, my role is to apply the law as pronounced by the Supreme Court, and in attempting to do so, it is my duty to consider that Court's [considered] dicta." *Ortiz v. Bank of America,* 547 F.Supp. 550, 556 n. 9 (E.D.Cal.1982).

4. All dates previously set in this matter are VACATED;

5. A Status Conference is now set for August 8, 1988, at 10:00 a.m. Counsel are to file Status Conference Reports pursuant to Local Rule 240 not later than seven (7) days before the hearing.

IT IS SO ORDERED.