Michael A. KELLY, Individually and as
Personal Representative of The
Estate of Regina Kelly,

v.

BLUE CROSS & BLUE SHIELD
OF RHODE ISLAND.

Civ. A. No. 91–0005L.

United States District Court,
D. Rhode Island.

Feb. 24, 1993.

Edward L. Gnys, Jr., Gunning, LaFazia & Gnys, Providence, RI, for plaintiffs.

Matthew F. Medeiros, Genevieve M. Domenico, Flanders & Medeiros, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on the motion of defendant Blue Cross & Blue Shield of Rhode Island ("Blue Cross") for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, Blue Cross seeks to strike the state law claims and jury demand asserted by plaintiff, Michael A. Kelly, in Counts I, II, and III of the Amended Complaint. Blue Cross argues that the underlying case, arising from Blue Cross's decision to deny reimbursement for Regina Kelly's medical treatment, is controlled by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. (1992). It, therefore, contends that plaintiff's state law claims are preempted and his demand for a jury is unavailing. Despite claims under ERISA in Count IV of the Amended Complaint, plaintiff now asserts, in response to defendant's motion, that ERISA is inapplicable and defendant's motion should be denied.

## BACKGROUND

At its core, this litigation involves a dispute over a health care insurance contract between Blue Cross and Regina Kelly, plaintiff's late wife. The present motion is to determine whether the means for resolving that dispute are confined to those available under ERISA or, if instead, state laws apply.

In 1989, Regina Kelly, a citizen of South Carolina, discovered she had breast cancer. In May of that year, Mrs. Kelly underwent a bone marrow rescue procedure called an Autologous Bone Marrow Transplant ("ABMT") at the Medical University of South Carolina. Essentially, doctors withdrew her bone marrow, preserved the marrow under extreme cold (cryopreservation), and then administered chemotherapy. After the chemotherapy was completed, the patient's own preserved marrow was reinfused into her bones.

At the time of this treatment, Regina Kelly had a health care insurance contract with defendant, Blue Cross. This coverage was paid for entirely by Academic Enterprises, Incorporated, a corporation which owns and operates several schools located in Rhode Island and Connecticut. Academic Enterprises has paid since 1975, and presently plans to continue paying, one hundred percent of the Blue Cross premiums for its eligible employees.[1] An employee's eligibility for the health care insurance coverage, as well as for the dental, life, and long term disability insurance offered by the corporation, is based on the number of hours the employee works, as determined by the formula devised by the owner of the corporation. Regarding health care, the eligible employee may choose from one of several group plans offered by the corporation, including the corporation's group plan with Blue Cross.[2] Regina Kelly was the sole owner and Chairman of the Board of Academic Enterprises, and, thus, the corporation considered her a full-time employee eligible for the benefits.

After her ABMT, the Medical University of South Carolina submitted a claim on Regina Kelly's behalf for reimbursement from Blue Cross for her medical treatment. On October 16, 1989, Blue Cross rejected Mrs. Kelly's claim. Despite her objection, Blue Cross declined to reimburse her for the costs of the ABMT, characterizing the treatment as investigative and/or experimental and, therefore, not covered by her agreement with Blue Cross. Regina Kelly appealed that decision within defendant's corporate structure in accordance with the contractual requirements of the agreement. Defendant refused to reverse its determination and denied the appeal.

Unable to resolve the dispute, Regina Kelly filed suit in this Court on January 4, 1991. Jurisdiction was based on the diversity between the South Carolina plaintiff and the Rhode Island defendant and an amount in controversy allegedly exceeding $50,000. The two count Complaint alleged that defendant breached its contractual duties and intentionally or negligently inflicted mental and emotional harm on Regina Kelly. In the Complaint, Regina Kelly sought compensatory and punitive damages and also claimed a trial by jury under each count.

Subsequent to the commencement of this action, Regina Kelly died. In the Amended Complaint, filed on March 6, 1992, Michael A. Kelly, Regina's husband, who was also a citizen of South Carolina, was substituted as plaintiff, individually and as personal representative of the estate of Regina Kelly. The Amended Complaint asserted claims by Michael Kelly against Blue Cross for negligent breach of contract, for infliction of mental and emotional harm upon Michael and Regina Kelly, and for both a declaratory judgment of Blue Cross's responsibility to pay for Regina Kelly's treatment and a claim for attorney's fees under ERISA. In response, Blue Cross filed this motion for partial summary judgment seeking to strike plaintiff's state law claims and jury demand. Blue Cross first argues that ERISA applies. It then contends both that ERISA supersedes state laws, such as the ones relied on by plaintiff, which relate to any ERISA employee benefit plan and that the application of ERISA requires a decision in equity by the Court, thus eliminating plaintiff's right to a jury.

After hearing oral arguments, the Court took this matter under advisement. It is now in order for decision. The Court concludes that ERISA does not apply to plaintiff's claims. Therefore, the Court denies defendant's motion for partial summary adjudication and to strike plaintiff's jury demand.

## DISCUSSION

### I. *Partial Summary Judgment Standard*

Defendant has moved for summary judgment on the first three counts of the Amend-

---

1. Eligible employees may pay an additional premium through weekly salary deductions to obtain coverage for family members.

2. Currently, in addition to Blue Cross, Academic Enterprises offers Ocean State Physicians Health and Harvard Community Health Plan. In accordance with decisions by the owner, the corporation now pays the entire premium for the employee's coverage under all of the plans, however, in the past, the corporation contributed only a portion of the premium for certain plans.

ed Complaint and to strike plaintiff's demand for a jury trial. Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In determining whether summary adjudication is appropriate, the court must view the facts on the record and all inferences therefrom in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). Additionally, the moving party bears the burden of showing that no evidence supports the non-moving party's position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In this case, defendant must prove the facts necessary to establish that ERISA preempts plaintiff's state law claims. *Kanne v. Connecticut General Life Ins. Co.*, 859 F.2d 96, 99 n. 4 (9th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *Doe v. Blue Cross & Blue Shield of Rhode Island*, No. 91–0492P (D.R.I. April 19, 1992) (Order Affirming Memorandum and Order of Magistrate Judge). The party opposing summary judgment need only show that there are material questions of fact which must be resolved before the Court can decide the related legal issues, *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989), or that the law does not support the moving party's position.

In this case, no material facts regarding the issue of ERISA applicability are in dispute. However, the law dictates that the moving party is not entitled to an adjudication as a matter of law. Instead, as discussed below, the Court concludes that ERISA is inapplicable and, therefore, denies defendant's motion to strike plaintiff's state law claims and jury demand.

## II. ERISA

Arguing that Regina Kelly obtained her Blue Cross health care coverage pursuant to an employee benefit plan established by her employer, Academic Enterprises, Blue Cross concludes that ERISA preempts plaintiff's state law claims and forecloses any jury trial option he might have otherwise enjoyed. Plaintiff, on the other hand, contends that Regina Kelly's insurance coverage was not part of an employee benefit plan, and that state law, rather than ERISA, controls the contractual relationship between Blue Cross and Mrs. Kelly.

██ The Court agrees with Blue Cross that ERISA broadly preempts state law claims relating to employee benefit plans brought by ERISA participants and beneficiaries. 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). However, after reviewing the facts and arguments presented by each side, the Court concurs with plaintiff's view that ERISA does not apply to this case. More specifically, the Court concludes that Regina Kelly was an employer, not an employee, under ERISA, and therefore her insurance could not have been obtained as a part of an ERISA employee benefit plan. Further, even if it had been part of an ERISA plan, as neither she nor her husband could be participants or beneficiaries with rights to sue under ERISA, ERISA does not preclude their state law claims.

### A. Employee Benefit Plan

To decide whether ERISA preempts plaintiff's state law claims and jury trial demand, the Court must first determine the scope of ERISA's application, if any, to this case. Blue Cross argues that ERISA applies because Regina Kelly received her Blue Cross health insurance as a part of an "employee benefit plan" that was "established or maintained ... by [an] employer engaged in commerce or in [an] industry or activity affecting commerce," as required for ERISA coverage in 29 U.S.C. § 1003(a).[3] The parties do not

---

**3.** In relevant part, 29 U.S.C. § 1003(a) provides:

(a) ... [T]his subchapter shall apply to any employee benefit plan if it is established or maintained—

dispute Academic Enterprises's status as an "employer engaged in commerce or in [an] industry or activity affecting commerce," however, they disagree about whether Regina Kelly obtained her coverage through an employee benefit plan established or maintained by an employer. Reaching a conclusion on this issue, requires maneuvering through a maze of definitions set forth in ERISA.

■ Starting with the broadest concept, ERISA defines "employee benefit plan" or "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). Next, the statute provides that "employee welfare benefit plan" and "welfare plan" mean:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....

29 U.S.C. § 1002(1). The First Circuit, adopting the approach set forth by the Eleventh Circuit, has parsed these statutory definitions to arrive at the "five essential constituents" of an employee welfare benefit plan:

> (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
> (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
> (3) by both.

4. As discussed in greater detail later in the opinion, under ERISA, "[t]he term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a

(1) a plan, fund or program (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits ... (5) to participants or their beneficiaries.

*Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir.1990) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir.1982) (en banc)), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). While, as discussed below, these definitions lead the Court to agree with Blue Cross that Academic Enterprises had established an employee benefit plan for its employees, after considering the purpose of ERISA, the Court concludes that Regina Kelly's coverage does not fall within the parameters of this employee benefit plan.

### 1. Did Academic Enterprises Establish An Employee Welfare Benefit Plan For Its Employees?

■ If, as plaintiff argues, Academic Enterprises did not establish an employee welfare benefit plan, then the inquiry regarding whether Regina Kelly's coverage was part of a plan would be moot. However, the Court finds that the corporation did indeed establish and maintain an employee welfare benefit plan for its employees. First, as in *Wickman*, the parties in this case do not seriously dispute the existence of the latter three prerequisites. *Id.* If a plan was established, it was done so by an employer,[4] Academic Enterprises, for the purpose, at the very least, of providing medical, surgical, and hospital care to eligible employees, who were participants.[5]

group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). As ERISA includes corporations in its list of "person[s]," 29 U.S.C. § 1002(9), Academic Enterprises was a person acting as an employer directly in relation to an employee benefit plan.

5. Again as discussed in depth in part II.A.2 of this opinion, ERISA provides, in 29 U.S.C. § 1002(7):
> The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organi-

Further, although the former two elements, which were hotly contested by the parties, require more detailed assessment, they too indicate that the corporation established a plan. Specifically, the prevailing standard for divining whether a plan, fund, or program has been established was recently recited by the First Circuit:

[A] "plan, fund or program" under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.

*Id.* (quoting *Donovan,* 688 F.2d at 1373). Despite plaintiff's argument to the contrary, the facts presented confirm that the plan established and maintained by Academic Enterprises contains all of these elements. First, the Blue Cross coverage offered to Academic Enterprises employees since 1975 evidences "intended benefits." The "class of beneficiaries" consists of all eligible Academic Enterprises employees while Academic Enterprises provided the "source of financing" for the health care coverage by paying one hundred percent of the Blue Cross premiums for its eligible employees. Finally, the contract between Blue Cross and its individual subscribers, as communicated to the Academic Enterprises employees through Blue Cross benefit booklets, govern the "procedures for receiving benefits."

█ Further, the First Circuit has noted that the "crucial factor in determining if a 'plan' has been established is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis." *Id.* at 1083. An intention by the employer to provide benefits on a long term basis can be established by circumstances tending to create an anticipation that the furnishing of health care benefits will continue; a prior pattern of providing benefits to a large class of employees, even if the employer was operating under no formal agreement

to furnish such benefits, is sufficient to create such an expectation. *See Donovan,* 688 F.2d at 1374–75. In this case, the deposition of Jamie Harrower, Senior Vice President of Academic Enterprises reveals that the corporation had a long term commitment to provide benefits for its full-time eligible employees, and had no intention of terminating such benefits. Additionally, as in *Wickman,* the purchase of the Blue Cross coverage by Academic Enterprises:

was not an isolated and aberrational incident, limited only to [health care] insurance, or simply to [one employee]. [Academic Enterprises] provided a comprehensive insurance program, offering health, medical, dental, and life insurance.... The Company here also contemplated and devised specific insurance eligibility requirements. Apparent from this degree of planning, precision, and detail is that the purchase of the group policy was not an aberrational or singular act, but represented [Academic Enterprises's] calculated commitment to qualified employees for similar benefits regularly in the future. Thus, the group [health care] insurance formed a considered employer plan under ERISA....

*Wickman,* 908 F.2d at 1083.

█ Although plaintiff points to the absence of any writing acknowledging an ERISA plan, "[t]here is no requirement of a formal, written plan in either ERISA's coverage section, or its definitions section. Once it is determined that ERISA covers a plan, the Act's fiduciary and reporting provisions do require the plan to be established pursuant to a written instrument, but clearly these are only the responsibilities of administrators and fiduciaries of plans covered by ERISA and are not prerequisites to coverage under the Act." *Donovan,* 688 F.2d at 1372 (citations omitted).

█ Similarly, plaintiff's reliance on *Taggart Corp. v. Life & Health Benefits Admin.,*

zation, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

Here, a number of employees of Academic Enterprises, beside Regina Kelly, are or may become eligible to receive medical benefits from an employee benefit plan covering employees of Academic Enterprises.

617 F.2d 1208 (5th Cir.1980), *cert. denied sub nom. Taggart Corp. v. Efros*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981), for the contention that the bare purchase or advertisement of insurance coverage does not necessarily constitute the establishment of a plan, fund, or program, while accurate, *see Wickman*, 908 F.2d at 1082, is unavailing in this instance. First, under the First Circuit's narrow interpretation of the case, *Taggart* "does not stand for the proposition 'that an employer . . . that only purchases a group health insurance policy . . . to provide health insurance to its employees . . . cannot be said to have established or maintained an employee welfare benefit plan.'" *Wickman*, 908 F.2d at 1083 (quoting *Donovan*, 688 F.2d at 1375). Further, "'the purchase of a group policy . . . covering a class of employees offers substantial evidence that a plan, fund, or program has been established.'" *Id.* (quoting *Donovan*, 688 F.2d at 1375). Additionally, Academic Enterprises does more than merely purchase or advertise the plan; among other actions, it offers various types of insurance to its eligible employees, maintains records regarding contributions and policy selections, and establishes criteria for plan eligibility.[6]

### 2. Was Regina Kelly's Blue Cross Coverage Part of an Employee Welfare Benefit Plan?

At first blush, the determination that Academic Enterprises established a plan through which employees could obtain Blue Cross coverage seems to end the inquiry in Blue Cross's favor. However, even though the Court concludes that Academic Enterprises had established an employee benefit plan for employees, in light of the purpose of ERISA and Regina Kelly's ownership of Academic Enterprises, it is not satisfied that Regina Kelly's Blue Cross coverage was obtained as a part of that plan.

### a. Employer Status

Congress enacted ERISA to insure that the private retirement and welfare plans created for employees were not abusively administered or invested. *Donovan*, 688 F.2d at 1370. Such concern prompted the framer's of ERISA to provide rights and remedies to employees and their beneficiaries "by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect [to employee benefit plans], by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

Congress did not intend persons such as Regina Kelly, who owns the corporation which created the employee benefits, to enjoy such rights and remedies. Since she was the owner of Academic Enterprises, Mrs. Kelly was an employer under ERISA. As recited above at note 4, ERISA defines "employer" broadly as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). Regina Kelly falls within the purview of this definition. As the sole shareholder and Chairman of the Board, she could establish policy regarding plan eligibility, could control the company's decisions regarding which coverage to offer, and could control the corporation's decision to pay the insurance coverage premiums.

Despite the fact that Regina Kelly worked for Academic Enterprises, as an employer, she cannot also occupy employee status under ERISA. Although the ERISA definition of employee, "any individual employed by an employer," 29 U.S.C. § 1002(6), sheds little light on the issue, the First Circuit has held explicitly, "'Employee' and 'employer' are

---

6. Additionally, although the Department of Labor has set forth regulations under which certain group insurance programs may qualify for exclusion from ERISA's definition of "employee benefit plan" "established or maintained" by the employer, 29 C.F.R. § 2510.3–1(j) (1992), as the first factor requires that the employer not contribute to the group insurance program, 29 C.F.R. § 2510.3–1(j)(1), Academic Enterprises's practice of paying the premiums for its eligible employees precludes any argument that its purchase of group insurance from Blue Cross falls into this "safe harbor."

plainly meant to be separate animals; under Part I,[7] the twain shall never meet." *Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957, 959 (1st Cir.1989). The First Circuit is not alone in this determination. *See, e.g., Meredith v. Time Ins. Co.,* 980 F.2d 352 (5th Cir.1993) (under ERISA, owner of business cannot simultaneously be employer and employee); *Fugarino v. Hartford Life & Accident Ins. Co.,* 969 F.2d 178 (6th Cir.1992) (sole proprietor is employer rather than employee); *Giardono v. Jones,* 867 F.2d 409, 411 (7th Cir.1989) ("employer cannot ordinarily be an employee or participant under ERISA"); *Peckham v. Board of Trustees of the International Brotherhood of Painters and Allied Trades Union,* 653 F.2d 424 (10th Cir.1981) (sole proprietors precluded from dual status as employer-employee under ERISA); *but see Dodd v. John Hancock Mutual Life Ins. Co.,* 688 F.Supp. 564, 571 (E.D.Cal.1988) (contra).

Department of Labor regulations cited by plaintiff also support the conclusion that Regina Kelly was an employer, rather than an employee for purposes of Part I of ERISA. Acting pursuant to the statute's grant of power, 29 U.S.C. § 1135,[8] the Secretary of Labor clarified the definition of "employees" by explaining:

> An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse....

29 C.F.R. § 2510.3–3(c)(1) (1992). As noted in *Kwatcher,* "When the agency entrusted with the implementation and elucidation of a statute parses it in a way that the resultant interpretation derives its essence from the enabling legislation, we must accord ensuing regulations 'considerable weight.'" *Kwatcher,* 879 F.2d at 962 (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782,

81 L.Ed.2d 694 (1984)). Finding section 2510.3–3(c)(1) consistent with legislative history and not unreasonable, the First Circuit declared, "The regulation must, therefore, be given controlling effect." *Id.* Again, other circuits have similarly concluded that the regulation clarifying the definition of employee under ERISA is reasonable and controlling. *See, e.g., Meredith,* 980 F.2d at 356–58; *Schwartz v. Gordon,* 761 F.2d 864, 867–868 (2d Cir.1985).

### b. Employer's Insurance Not Part Of Plan From Outset

Although not explicitly stated in the definition of welfare benefit plan, the Court determines that, as an employer, Regina Kelly's Blue Cross coverage did not fall within the parameters of the "plan, fund, or program" established or maintained by Academic Enterprises for the purpose of providing benefits to participants or their beneficiaries. Employee benefit plans exist solely for the advantage of employees, and employers should not partake in plan benefits from the inception of such plans.

Although a few courts have assumed that an employer's insurance, if obtained through a group plan also offered to employees, was part of the company's employee welfare benefit plan, these cases have not analyzed or explained this assumption. Some courts assumed, without discussion, that a sole shareholder could be an employee, and thus treated the sole shareholder like other employee-participants under ERISA. *See, e.g. Doe v. Blue Cross & Blue Shield of Rhode Island,* No. 91–0492P (D.R.I. April 19, 1992); *Richard v. Blue Cross & Blue Shield,* 604 A.2d 1260 (R.I.1992). Other courts, which recognized that an owner could not be an employee, failed to discuss why they considered the owner's coverage part of the employee benefit plan. *See, e.g., Fugarino,* 969 F.2d at 185.

On the other hand, after analysis of the issue, this Court concludes that the only logi-

---

**7.** Part I of ERISA, 29 U.S.C. §§ 1001–1168, includes all of ERISA's provisions regarding reporting and disclosure, participation and funding, and fiduciary responsibilities, and is the part of ERISA with which the Court is concerned in the present matter.

**8.** ERISA authorizes the Secretary of Labor to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter." 29 U.S.C. § 1135.

cal view is that ERISA prohibits employers from obtaining insurance pursuant to employee welfare benefit plans. First, the mere fact that an employer is enrolled in the same group insurance policy purchased to provide benefits to employees does not necessarily mean that her insurance policy is part of the employee benefit plan. "The insurance policy, after all, is not the same thing as the ERISA plan; it is merely evidence of the establishment of such a plan." *Dodd*, 688 F.Supp. at 568 (citing *Donovan*, 688 F.2d at 1373).

Second, the purpose of ERISA suggests just the opposite, that an employer's policy is not part of the ERISA plan. Congress made "employee benefit plans" the cornerstone of ERISA protection, applying ERISA only to benefits derived from such plans. 29 U.S.C. § 1003. It is clear that Congress defined "employee welfare benefit plan" with the purpose of providing protection for *employees*, not employers. Accordingly, the "gist" of an employee welfare benefit plan is that "the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship. . . ." *Donovan*, 688 F.2d at 1371. Additionally, as part of the program to protect employees' assets, an anti-inurement section insures that employers are excluded from receiving any assets of an employee benefit plan. 29 U.S.C. § 1103(c)(1).[9] The First Circuit has noted, "[T]he legislative history leaves little doubt that the anti-inurement rule should be construed to keep as strict a separation as practicable between employers and the funds set aside to benefit employees." *Kwatcher*, 879 F.2d at 961.

Courts have already recognized that employers, who cannot simultaneously be employees, cannot fit within the definition of an ERISA plan "participant."[10] *See, e.g., Fugarino*, 969 F.2d at 186; *Kwatcher*, 879 F.2d at 959; *Giardono*, 867 F.2d at 411; *Peckham*, 653 F.2d at 426–27. In *Kwatcher*, after an in-depth analysis, the First Circuit concluded, "The language of Part I, its legislative history, and the appurtenant regulations all reflect the conclusion that sole shareholders are 'employers,' and therefore cannot be 'employees' for purposes of plan participation." *Kwatcher* 879 F.2d at 963. Although *Kwatcher* focused on the issue of plan participation in terms of a sole shareholder's standing to recover benefits allegedly due under an employee pension benefit plan, the First Circuit's analysis supports this Court's view that employers should not be able to participate in an ERISA plan by obtaining insurance pursuant to the plan.

In *Kwatcher*, the sole shareholder could not have a policy with the pension plan separate from the employee benefit plan; therefore, the Court kept "as strict a separation as practicable between employers and the funds set aside to benefit employees" by determining that an owner-employee could not be a "participant" with rights to recover from the plan. *Id.* at 961. However, in the present case, the corporation can pay health care premiums for its owner, but not treat the resulting contract for her as a part of the employee benefit plan because the funds it used to pay the premiums for her policy were entirely different from those it used to pay for employees' policies. In short, the employee benefit plan has been deprived of nothing because the corporation chooses to also benefit its owner.

Thus, this Court concludes that, although Academic Enterprises bought Regina Kelly's policy in the same manner as it purchased policies for its employees, in order to strictly "divorce owner-employees from plan participation," *id.* at 959, her policy should not be treated as part of the employee benefit plan. Rather, since corporations can purchase insurance for persons who, under ERISA, are considered employers, the Court determines that Academic Enterprises's payment of premiums to Blue Cross on behalf of Regina Kelly created a contractual relationship gov-

**9.** The "anti-inurement" provision states:

[T]he assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.
29 U.S.C. § 1103(c)(1).

**10.** ERISA's definition of "participant" is set out above at note 5.

erned by state laws.[11] Therefore, ERISA does not preempt plaintiff's state law claims and demand for a jury trial.

### B. Participant or Beneficiary Status

■ The determination that Regina Kelly did not obtain her insurance coverage as part of an employee welfare benefit plan precludes ERISA application to any claims regarding her insurance. However, the Court also concludes that, even if Mrs. Kelly's Blue Cross coverage is to be considered part of an employee welfare benefit plan, plaintiff's state law claims would not be preempted. If Regina Kelly's Blue Cross coverage is regarded as part of an employee welfare benefit plan, as explained below, Mrs. Kelly's status as employer would prevent plaintiff from bringing claims under ERISA. Therefore, recognizing that Blue Cross must necessarily owe contractual obligations to Regina Kelly, the Court concludes that Congress did not intend to leave plaintiff with no means of bringing claims arising out of duties allegedly owed under the Blue Cross policy.

■ Defendant argues that ERISA applies and preempts plaintiff's state law claims, leaving plaintiff with solely ERISA claims. However, the only persons who can recover benefits due under the terms of a plan, or enforce their rights thereunder, are participants and beneficiaries. 29 U.S.C. § 1132(a)(1)(B). In this case, plaintiff has alleged claims on behalf of his late wife's estate as well as on his own behalf. In the former capacity he is stepping into Regina Kelly's shoes and can only sue under ERISA if Regina Kelly had been a participant or beneficiary.[12] In the latter capacity, his ability to bring a civil action under ERISA to recover payments allegedly due under his late wife's plan depends on his status as a beneficiary of her policy.[13]

As discussed in Part II.A.2 above, Regina Kelly, as an employer, could not be a participant in an employee benefit plan. *Kwatcher,* 879 F.2d at 963. Additionally, neither Regina nor Michael Kelly were beneficiaries. ERISA defines beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Even if her Blue Cross coverage was part of an employee benefit plan, neither Regina nor Michael Kelly were designated by a participant, nor by the terms of the employee benefit plan, to become entitled to a benefit thereunder.[14] Accordingly,

---

11. Even though Regina Kelly was covered by the same insurance as her employees in the employee welfare benefit plan, the anti-inurement provision of ERISA was not violated. Since all of the funds held by an insurer are not assets of an employee benefit plan which purchases a group policy from that insurer, "if an owner of the corporation owns his own insurance, even if commingled with insurance which is part of a benefit plan, payment to him of insurance proceeds owed him under his insurance is not distribution of an asset of the plan." *Dodd,* 688 F.Supp. at 570.

12. ERISA claims survive the death of a participant since ERISA is a remedial, rather than penal, statute, which contains no provision indicating otherwise. *Khan v. Grotnes Metalforming Systems, Inc.,* 679 F.Supp. 751, 756–57 (N.D.Ill. 1988); *see also James v. Louisiana Laborers Health and Welfare Fund,* 766 F.Supp. 530 (E.D.La.1991) (representative of deceased participant in health and welfare fund had derivative standing to sue under ERISA for decedent's unpaid medical benefits).

13. In *Vogel v. Independence Federal Savings Bank,* 728 F.Supp. 1210, 1219–22 (D.Md.1990),

an insured's family members were "beneficiaries" under ERISA since they were obligated under Maryland law to provide support to the insured who was ill.

14. In *Harper v. American Chambers Life Ins. Co.,* 898 F.2d 1432, 1434 (9th Cir.1990), the Ninth Circuit determined that a partner and his spouse, like sole shareholders and their spouses, were not employees. It thus reasoned that they could not bring claims regarding an insurance policy under ERISA as "participants" even if they obtained the policy pursuant to an employee benefit plan established by the partnership. *Id.* However, that Court decided that, because the insurance policy designated the partner and his spouse as the persons entitled to benefits, they could bring an ERISA claim regarding the policy as "beneficiaries." *Id.* However, under this interpretation, an employer would always have standing as a beneficiary if he named himself as the person entitled to benefits on the insurance or pension plan. This Court concludes that such an interpretation of "beneficiary," which would undermine ERISA's purpose of insuring that benefits not inure to employers, was impliedly rejected by the First Circuit in *Kwatcher,* 879 F.2d at 963.

plaintiff cannot bring suit under ERISA to recover benefits due under the terms of the benefit plan.

As Blue Cross clearly owed Regina Kelly duties under a contract, the Court determines that plaintiff, who has no right to bring claims under ERISA, must have an alternative legal mechanism under which to seek relief regarding Blue Cross's alleged refusal to comply with the contract. Admittedly, ERISA states that it "supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [established or maintained by an employer engaged in commerce or in an industry or activity affecting commerce]." 29 U.S.C. § 1144(a). However, if ERISA preempted state law claims relating to employee benefit plans brought by persons who were owed contract obligations yet were neither participants nor beneficiaries, such persons would have no recourse. Not finding a First Circuit directive on how to proceed, this Court chooses to follow the dictates of other districts and circuits. The United States District Court for the Eastern District of California explained:

> In order for an individual to bring an action to recover benefits owed under an ERISA plan, the individual must be a "participant" or "beneficiary" of the plan. *See* 29 U.S.C. § 1132(a)(1)(B). Conversely, if plaintiff is not a "participant" or "beneficiary," he may sue under and seek the broader relief provided by state tort law.... Put another way, in order for plaintiff's state law claims to be completely preempted ..., he must be entitled to bring an ERISA claim; that is, he must have been a "participant" or "beneficiary" in the corporation's ERISA plan at the relevant times.

*Dodd,* 688 F.Supp. at 568.

Similarly, the Sixth Circuit recently adopted verbatim the *Dodd* reasoning regarding state law claims. *Fugarino,* 969 F.2d at 186. In *Fugarino,* Richard Fugarino, as sole proprietor of The Glens Restaurant, purchased a group health insurance policy to provide health and medical coverage

for himself, his dependents, and his employees. *Id.* at 181. Fugarino paid the premiums for himself, his dependents, and one employee, while the remaining participating employees paid their own premiums. *Id.* After his son sustained injuries in a car accident, Fugarino sued the insurer for failure to pay the resulting medical expenses. *Id.* The Court first determined that the restaurant had established a plan and assumed that Fugarino and his family had received their health care coverage through that plan. *Id.* at 185. However, the Court then held that as sole proprietor, Fugarino was an employer rather than an employee, and thus, he could not qualify as a participant and his child could not qualify as a beneficiary. *Id.* at 186. Therefore, the Sixth Circuit reasoned that, because neither Fugarino nor his son could bring a claim to recover benefits under ERISA, they could "sue under and seek the broader relief provided by state tort law." *Id.* (citing *Dodd,* 688 F.Supp. at 568).

Further, analogous conclusions have been expressed in a number of other cases. *See, e.g., Templeman v. Dahlgren,* Civ. No. 89-667–FR, 1990 WL 117451, at *3 (D.Or.1990) ("even a claim which relates to ERISA is not preempted if the claimant is not a participant of beneficiary of the plan"); *Pierce v. Capitol Life Ins. Co.,* 806 P.2d 388, 390 (Colo.Ct.App.1990) ("In order for a plaintiff's state law bad faith claim to be preempted, he or she must be entitled to bring an ERISA claim"); *Turnbow v. Pacific Mutual Life Ins. Co.,* 104 Nev. 676, 765 P.2d 1160, 1162 (1988) (as sole proprietor, "appellant does not qualify as a participant or beneficiary in an ERISA plan within the meaning of ERISA and therefore may seek relief under our state common law"), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989); *cf. Sica v. Equitable Life Assur. Soc.,* 756 F.Supp. 539, 540 (S.D.Fla.1990) (independent contractor who obtained insurance policy through an ERISA-regulated plan could maintain an action for state common law claims, whereas, if he had been an employee, and thus a participant, ERISA would have preempted his state law claims).[15]

---

**15.** This Court recognizes that, under different    circumstances, at least one court has determined

This Court, agreeing with the majority of courts opining on this issue, refuses to strip persons who fail to qualify as participants or beneficiaries of the right to sue for recovery arising out of a clearly established contractual relationship. Rather, it concludes that such persons may take advantage of any available state law claims. Therefore, in the case at bar, even if Regina Kelly's coverage had been secured through an employee benefit plan, Michael Kelly, as personal representative of the estate of Regina Kelly and individually, can bring state law claims arising out of the contractual relationship that existed between Blue Cross and his late wife.

## CONCLUSION

In accordance with the foregoing analysis, the Court denies defendant's motion for partial summary judgment on plaintiff's state law claims. Also the Court denies defendant's motion to strike plaintiff's jury demand on those state law claims.

It is so Ordered.

that state law claims related to an employee benefit plan were preempted even though brought by a person with no recourse under ERISA. In *Martin v. General Motors Corp.*, 753 F.Supp. 1347, 1355–58 (E.D.Mich.1991), the Court determined that plaintiff was not a participant in an employee pension benefit plan because he had no colorable claim to pension benefits. It thus reasoned that ERISA intended to prevent persons who have already been adjudged to have no colorable claim to pension benefits from bringing state law claims regarding those benefits. *Id.* In the case at bar, however, the determination that Regina Kelly was not a participant did not require a decision that she had no colorable claim to benefits; in fact, the Court recognizes that Blue Cross is obligated to her as a result of a contractual relationship between the two. Thus, by the present decision, this Court need make no determination regarding the ability of persons who have been adjudged non-participants because they have no colorable claim to benefits to bring state law claims relating to an employee benefit plan.